UNITED STATES of America,
Plaintiff-Appellee,

v.

Jerry Wayne BAILEY, Michael David Harstrom, Michael Eugene Harp and Tommy Joe Holt, Defendants-Appellants.

No. 75–3189.

United States Court of Appeals,
Fifth Circuit.

Aug. 27, 1976.
Rehearing Denied Oct. 28, 1976.

James H. Billingsley, Dallas, Tex. (Court-appointed), for Bailey.

Thomas A. Blakeley, Jr., Dallas, Tex. (Court-appointed), for Hartstrom.

Carlisle Blalock, Dallas, Tex. (Court-appointed), for Harp.

Ira E. Tobolowsky and Garland Paul Andrews, Dallas, Tex. (Court-appointed), for Holt.

Frank D. McCown, U. S. Atty., Ft. Worth, Tex., Judith A. Shepherd, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before RIVES, GOLDBERG and GEE, Circuit Judges.

RIVES, Circuit Judge:

Jerry Wayne Bailey, Michael David Harstrom, Michael Eugene Harp, and Tommy Joe Holt were charged with assaulting a federal witness in violation of 18 U.S.C. § 1503.[1] On July 14, 1975, in the absence of the jury, but in the presence of the presiding judge, the prosecutor announced that he had filed a "dangerous special offender" notice against Bailey, Harp, and Holt, seeking increased punishment against those de-

---

1. Tit. 18 U.S.C. § 1503 provides in pertinent part:

"Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States . . . or injures any party or witness in his person or property on account of his attending or having attended such court . . . or on account of his testifying or having testified to any matter pending therein . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both."

fendants pursuant to 18 U.S.C. § 3575.[2] The allegations contained in this notice were not disclosed to the judge. The jury on July 16, 1975 found all defendants guilty. Pursuant to the dangerous special offender statute, appellants Holt and Harp were each sentenced to a prison term of 15 years—a 10-year enhancement for each; and appellant Bailey was sentenced to a prison term of 10 years—a 5-year enhancement. Appellant Harstrom, whose sentence was not sought to be enhanced, was sentenced to imprisonment for the maximum term for the offense, 5 years.

On this appeal the defendants question first the validity of their convictions, and, secondly, raise statutory and constitutional issues concerning the application of the dangerous special offender statute. We affirm the conviction of each of the defendants for violation of 18 U.S.C. § 1503, but as to the enhanced sentences imposed on Bailey, Harp, and Holt, we hold that the procedure prescribed by 18 U.S.C. § 3575 was not followed and remand their cases for resentencing.

Defendants and another prisoner, Gene William Hackett, who had recently testified in a federal criminal proceeding, were among thirty prisoners confined on March 8, 1975 in a "tank" in the Dallas (Texas) County Jail when there was an assault made upon Hackett. Shortly after the beating, a prison guard took Polaroid snapshots to document the nature and extent of Hackett's injuries. Three days later, an FBI photographer took additional pictures of the victim and a picture of appellant Holt's hands. The photographs of the victim were admitted in evidence over the objection of appellant Harstrom and the photograph of appellant Holt's hands was admitted over the objection of appellant Holt.

■ The pictures in question were clearly relevant. While none of the defendants disputed the fact that injuries had occurred to Hackett, his injuries nonetheless remained an issue in the case. *United States v. Hearod*, 5 Cir. 1974, 499 F.2d 1003, 1004; *United States v. Moton*, 5 Cir. 1974, 493 F.2d 30, 32. The Federal Rules of Evidence provide that relevant evidence may be excluded if the district court judge determines that its probative value is substantially outweighed by the danger of prejudice. Fed.R.E. 403. In such cases evidentiary decisions as to admissibility of evidence should not be disturbed except for abuse of discretion.[3] *United States v. Campbell*, 9 Cir., 466 F.2d 529, *cert. denied*, 409 U.S. 1062, 93 S.Ct. 571, 34 L.Ed.2d 516 (1972). In the present case, we hold that the district court judge did not commit an abuse of discretion. While the photographs may be stark, they are not so gruesome or sensational as to be unduly prejudicial. No other substantial question is presented as to the validity of the judgments of conviction. We pass to consideration of the sentences imposed upon the defendants.

■ Although aimed primarily at professional gangsters of the criminal underworld, Title X of the Organized Crime Control Act of 1970 includes a general federal recidivist statute.[4] Under that statute, a defendant who has committed a federal felony and has previously been convicted in the state, territorial, or federal courts of two or more felonies committed on differ-

---

**2.** This statute provides a way for enhancing the sentence of a defendant who has been convicted of or who has plead guilty or nolo contendere to a felony and who is determined by the court to fit the description of a "dangerous special offender." In such a case, the judge may sentence the defendant "to imprisonment for an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized by law for such felony." 18 U.S.C. § 3575(a) and (b) (1976 Supp.). For a more detailed discussion of this statute, see text, *infra*.

**3.** Since neither appellant Holt nor appellant Harp objected to the admission of the photographs, appellee contends that an even stricter standard—that is the "plain error rule" F.R. Crim.P. 52(b)—should apply as to the appeals of Holt and Harp. We need not decide that question.

**4.** The Act originated as S. 30, 91st Cong., 1st Sess. The bill was passed by the Congress and signed by the President, and Title X was codified at 18 U.S.C. §§ 3575–78 (1976 Supp.).

ent occasions is termed a "special offender" and an enhanced prison sentence is authorized if he or she is adjudged as "dangerous." 18 U.S.C. § 3575. A defendant is "dangerous" within the meaning of that statute "if a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant." 18 U.S.C. § 3575(f). The determination that a defendant is a "dangerous special offender" is made by the court sitting without a jury. The defendant or his or her counsel is permitted prior to hearing to inspect the presentence report. At the hearing, the defendant is allowed the assistance of counsel, compulsory process, and the cross-examination of such witnesses as appear. In making his determination, the judge may consider evidence submitted during the trial of the triggering offense, information submitted at the sentencing hearing, and the presentence report. The standard of proof is that of a preponderance of the evidence. In setting the sentence, the judge is to fix "an appropriate term" of imprisonment which cannot exceed 25 years. 18 U.S.C. § 3575(b). Should the prosecution be dissatisfied with the judge's sentence, a co-ordinate section, § 3576, permits the United States to seek review by a federal court of appeals where a higher sentence may be imposed if the appellate court determines that the pertinent findings are clearly erroneous or that the judge abused his discretion.

A troublesome aspect of Title X arises in its prescribed procedure. Title X provides that, when an enhancement is sought, the prosecuting attorney must file notice with the court a reasonable time prior to trial or acceptance by the court of a plea of guilty or nolo contendere. Such notice must set forth with particularity the reasons why the prosecutor feels that the defendant is a dangerous special offender. The statute then includes the following proviso:

"In no case shall the fact that the defendant is alleged to be a dangerous special offender be an issue upon the trial of such felony, be disclosed to the jury, or be disclosed before any plea of guilty or nolo contendere or verdict or finding of guilty to the presiding judge without the consent of the parties." 18 U.S.C. § 3575(a).

It is undisputed in this case that the prosecuting attorney, in open court in the absence of the jury but in the presence of the judge, announced that a "dangerous special offender" notice had been filed against three of the defendants. The substance of the allegations contained in the notice, however, was not disclosed. Motions to strike the notice were filed by the defendants, alleging that the express provisions of 18 U.S.C. § 3575 had been violated. The propriety of the denial of these motions is now before this Court.

The Organized Crime Control Act of 1970 first appeared as S. 30, 91st Cong., 1st Sess. (1969). The proposed bill provided only for nondisclosure to the jury of the "dangerous special offender" notice. One of the commentators on the proposed bill was Lawrence Speiser, Director of the Washington Office of the American Liberties Union (ACLU), who made this criticism:

". . . it is questionable whether the information required in the notice by the U. S. Attorney should be available to the judge prior to conviction, particularly where the defendant is being tried by the court. Rule 32(c) of the Federal Rules of Criminal Procedure, pertaining to presentence reports, which usually contain information relating to prior convictions and pertinent to a determination of 'dangerousness' provides that 'the [presentence] report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or been found guilty.' This rule recognizes that disclosure of information of this kind prior to a determination of guilt, to a judge, as well as to a jury, may be prejudicial to an accused. In fairness to those subject to sentencing as habitual offenders the court as well as the jury should be kept from having this information. At the same time, however, provisions must be made for apprising the accused before he enters a guilty plea that he may face increased sentencing."

*Hearings on S. 30 before the Subcomm. on Criminal Laws and Procedures of The Senate Comm. of the Judiciary*, 91st Cong., 1st Sess. at 468–469 (1969). The Senate, however, passed S. 30 without amending it to proscribe disclosure to the presiding judge. In the report accompanying the bill, the Committee on the Judiciary stated:

"No disclosure to the jury should be made of the allegation. See *Spencer v. Texas*, 385 U.S. 554 [87 S.Ct. 648, 17 L.Ed.2d 606] (1967). There is, however, no objection to the judge in a jury or non-jury case reading the allegation, since it is not among the sources of information upon which any judgment may be reached; it is for this purpose the equivalent of an indictment, not evidence. Compare Fed.R. Crim.P. 32(c)."

S.Rep. 91–617, 91st Cong., 1st Sess. 162–163 (1969).

When hearings were held in the House Judiciary Committee on S. 30, more criticism was encountered as to the procedural features of the recidivist provision. The Committee on Federal Legislation of the Association of the Bar of the City of New York predicted that, prior to trial, disclosure to the defendant of such adverse information regarding the defendant would force the judge to request a jury trial in almost all instances. Furthermore, the Association took issue with the interpretation of Fed.R.Crim.P. 32(c) found in the Senate Report, and contended that the underlying justification of F.R.Crim.P. 32(c) is "not the evidentiary nature of the matter in the presentence report (which is, after all, hearsay) but the recognition that the court is human and that its rulings could be subconsciously influenced by such matters as are found in a presentence report." *Hearings on S. 30 before Subcomm. No. 5 of the House Comm. on the Judiciary*, 91st Cong., 2nd Sess. at 338 (1970) [hereinafter *House Hearings*].

Criticism of S. 30 was also received from the American Bar Association (ABA). In a letter to The Honorable Emmanuel Celler, Chairman, House Committee on the Judiciary, ABA President Ed Wright requested that the bill be amended so as to prohibit, before trial to the judge, communication of the contents of the special offender sentencing notice. *House Hearings* 699. Counsel for the subcommittee requested the Justice Department to evaluate this recommendation from the ABA and to apprise the subcommittee of its analysis. *House Hearings* 672–81. The Justice Department concluded that there was no reason to believe that a court would be prejudiced by knowledge of the dangerous special offender notice. *House Hearings* 678. The Justice Department went on to observe that:

"Prior to a trial or the acceptance of a plea of guilty a judge has frequent occasion to receive information which reflects adversely upon a defendant's background and character—as at a bail hearing or a hearing upon a motion to suppress evidence—and a judge who rules upon such preliminary matters is not thereby disqualified from presiding at trial." *Id.*

Finally, it noted that, prior to pleading, it is essential as a matter of fairness to notify the defendant that he may, under the recidivist statute, receive enhancement of the maximum sentence if he is adjudged to be a "special offender."

The subcommittee, nevertheless, recommended amendment of S. 30 so as to prohibit disclosure of the special offender notice to the presiding judge without consent of the parties prior to any plea of guilty or nolo contendere or verdict or finding of guilty. The rationale given in H.R. 91–1549 was that such prohibition against disclosure is necessary to assure that the jury or the court will not be prejudiced against defendant prior to the determination of his or her guilt or innocence. See *U.S.Code Cong. & Admin.News*, p. 4037 (1970). The technique of how this notice is to be disclosed to the defendant, but not to the presiding judge, was not considered by the subcommittee.[5]

---

**5.** In *United States v. Edwards*, M.D.Fla.1974, 379 F.Supp. 617, the court found that the key to this notification conflict was the distinction between "presiding judge" and "court." See *United States v. Duardi*, W.D.Mo.1973, 384 F.Supp. 861, aff'd, 8 Cir. 1975, 529 F.2d 123,

To require the clerk of the court and the counsel for the parties to conceal from the judge information about the case conflicts with the normally desirable practice of a judge being familiar with the entire record before conducting a trial.

The United States Attorney argues that the statute was intended to prohibit disclosure of the allegations within the notice but not the bare fact that a notice has been filed. In order for this interpretation to have merit, we would have to believe that a federal judge is prejudiced only when he learns of the contents of a § 3575 notice and not when he is merely informed that a § 3575 notice has been filed. Although these two situations are conceptually distinct, the practical effect in both cases would probably be the same. A federal judge would have to be naive indeed not to be able to see beyond the notice. Of more importance, the United States Attorney's argument fails because the statute when literally read prohibits any kind of disclosure of the notice to the presiding judge and the government in this criminal case should be held strictly to the literal language of the Act.[6] While the statute's literal prohibition against disclosure may be "anomalous" as the district judge concluded, action to remove the anomaly[7] is a matter for the consideration of Congress. Because the government here failed to comply strictly with the statutory prerequisites for enhancement, the enhanced portion of the defendants' sentences must be overturned.

Accordingly, the judgments of conviction of Bailey, Harp, and Holt are affirmed except for their sentences, which are vacated and their cases remanded for resentencing in the light of this opinion. As to appellant Harstrom, the judgment of conviction and sentence are affirmed.

**VACATED AND REMANDED IN PART AND AFFIRMED IN PART.**

GEE, Circuit Judge (specially concurring):

I concur in the result and in the general analysis of the majority opinion. I write separately only to emphasize the reluctance with which I reach this agreement and to express my sympathy with the government's argument that our interpretation of the statute renders it unreasonable.

Although I can support no construction alternative to according 18 U.S.C. § 3575(a) its plain meaning, I regard the statute as more than merely anomalous. It is hopelessly quixotic and incoherent in terms of the policies which it ostensibly furthers. As the Justice Department's observations quoted in the majority opinion indicate, a presiding judge is inevitably exposed to potentially prejudicial preliminary matters. Hearings on motions to suppress evidence are a routine and obvious example. In a case such as this one, in which the judge was not the trier of fact and was merely apprised of the circumstance that the government was seeking an enhanced sen-

---

where the government did file the § 3575 notice with another judge of the court prior to trial. Such an interpretation, however, cannot be applied where there is only one judge in the district.

**6.** In *United States v. Tramunti,* S.D.N.Y.1974, 377 F.Supp. 6, the court held that a violation by the government of the procedures outlined in § 3575 requires that the notice be stricken. In *United States v. Noland,* 5 Cir. 1974, 495 F.2d 529, this Court dealt with the prosecution's violation of a similar notice requirement in the dangerous special drug offenders act, 21 U.S.C. § 851. There, the notice of enhancement was not filed until one day after sentencing. The court nullified the enhancement portion of that sentence, stating, "Provision for enhanced sen-

tencing is a legislative decision, and the procedure the legislature prescribes to effectuate its purpose must be followed." 495 F.2d 533.

**7.** This entanglement over notice to the defendant but nondisclosure of the notice to the judge is probably unavoidable in a plan which seeks to use the sentencing stage of an offense as the means for effectuating enhancement rather than separately indicting and trying the defendant for the crime of recidivism. If and when Congress does undertake to amend Title X of the Organized Crime Control Act of 1970, hopefully there will be a re-examination of the basic premise of the Organized Crime Control Act of 1970 that enhancement can be achieved by manipulating sentencing.

tence rather than the contents of the notice, the potential for prejudice is miniscule, milder far than that threatened by matter which juries are routinely instructed to— and presumably do—disregard. Indeed, the remedy applied by the majority, one apparently indicated by 18 U.S.C. § 3576, belies the notion that Congress was seriously concerned about such prejudice; although the evil is described as prejudice against the defendant before the determination of guilt or innocence, the remedy leaves the conviction standing and merely prevents the government from using the notice for its proper purpose.

We are bound, however, to enforce the statute as Congress wrote it regardless of its incoherence on the policy level. In response to the government's argument that this interpretation of the prohibition against notifying the presiding judge renders implementation of the statutory scheme unreasonably difficult in view of the pretrial filing requirement, I note that this case does not present the issue of whether substantial compliance with the latter requirement is sufficient. Although the particular procedural defect in this case requires that the enhanced sentences be vacated, some deviations from the prescribed scheme may well be permissible or, at worst, merely harmless error.